UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CHRISTIAN PELLOT; JOSCELYN WINT; ALI
MUHAMMED; and JOHNATHAN TUCKER, individually
and on behalf of all others similarly situated,

                             Plaintiffs,

                   -against-

PARAMOUNT PICTURES CORPORATION;
NICKELODEON MOVIES INC.; PLATINUM DUNES
PRODUCTIONS; GAMA ENTERTAINMENT PARTNERS;
MEDNICK PRODUCTIONS; HEAVY METAL
PRODUCTIONS LLC; REGENCY FILM ENTERPRISES,
INC.; PROTOZOA PICTURES, INC.; DISRUPTION
ENTERTAINMENT, INC.; RED GRANITE PICTURES, INC.;
APPIAN WAY PRODUCTIONS; SIKELIA PRODUCTIONS,
INC.; EMJAG PRODUCTIONS II, INC., and JOHN DOES
1-40,

                         Defendants.

------------------------------------------------------------------------X

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

      Plaintiffs CHRISTIAN PELLOT ("Pellot"), JOSCELYN WINT ("Wint"), ALI

MUHAMMED ("Muhammed") and JOHNATHAN TUCKER ("Tucker") on behalf of themselves

and all others similarly situated (collectively, "Plaintiffs") by and through their attorneys, VALLI

KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from

the Defendants, PARAMOUNT PICTURES CORPORATION; NICKELODEON MOVIES

INC.; PLATINUM DUNES PRODUCTIONS; GAMA ENTERTAINMENT PARTNERS;

MEDNICK PRODUCTIONS; HEAVY METAL PRODUCTIONS LLC; REGENCY FILM

ENTERPRISES, INC.; PROTOZOA PICTURES, INC.; DISRUPTION ENTERTAINMENT

INC.; RED GRANITE PICTURES, INC.; APPIAN WAY PRODUCTIONS; SIKELIA

PRODUCTIONS, INC.; EMJAG PRODUCTIONS II, INC., and JOHN DOES 1-40 ("Defendants") and allege as follows:

## INTRODUCTION

1.  This is a collective and class action brought under the United States Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.*, New York Labor Law §§650 *et seq.* (the New York Minimum Wage Act) and New York Labor Law §§195 *et seq.* (the New York Wage Theft Prevention Act) against Defendants for their failure to pay minimum wages and overtime to Parking Production Assistants ("PPAs") hired by Defendants to secure sets, lots, and streets throughout the New York metropolitan area (the "Production Sites"), in connection with Defendants' production of motion pictures, films and movies ("Movies").

2.  PPAs are required to keep the Production Sites clear of pedestrians and motorists by either placing cones or by parking company vehicles in order to block both foot and vehicle traffic. PPAs are also responsible for safeguarding production vehicles and equipment while they are on set.

3.  Plaintiffs, along with similarly situated current and former employees of Defendants, are non-exempt employees who are paid a shift rate of pay and who do not receive minimum wage or proper overtime compensation for hours worked beyond forty (40) per workweek.

4.  Defendants' regular failure to pay Plaintiffs and all other similarly situated employees for all hours over forty (40) in a workweek violates the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), New York Labor Law §§650 *et seq.* ("Minimum Wage Act"), the New York Wage Theft Prevention Act § 195 ("WTPA") (together, the "NYLL"), and any other cause(s) of action that can be inferred from the facts set forth herein.

5.    Defendants violate these laws by engaging in a systematic scheme of altering Plaintiffs' paychecks in order to deprive them of their statutorily required overtime pay.

6.    Plaintiffs allege, on behalf of themselves and similarly situated current and former employees who elect to opt into this action pursuant to the FLSA, that they are entitled to recover: (i) unpaid and incorrectly paid wages for hours worked above 40 in a workweek, as required by law; (ii) unpaid overtime; (iii) liquidated damages; (iv) attorney fees and costs pursuant to the FLSA; and further relief as this Court finds necessary and proper.

7.    Plaintiffs also bring this action, pursuant to the Fed. R. Civ. P. 23, on behalf of a class of all persons who are and were employed by Defendants in the New York metropolitan area as PPAs (including comparable positions under any other nomenclature) during the past six (6) years through the final date of the disposition of this action who: (i) were not paid minimum wage for all hours worked or who were not properly paid overtime wages for hours worked above forty (40) in a workweek, as required by the NYLL; or, (ii) who were subjected to Defendants' willful failure to comply with the notice and record keeping requirements of NYLL§195(1) and 195(3) resulting in penalties under NYLL § 198(1)b and 198(1)d; and who are entitled to recover: (1) back pay; (2) unpaid overtime; (3) liquidated damages; (4) statutory damages for notice and recordkeeping violations; (5) attorney's fees and costs; (6) interest; and such other further relief as this Court finds just and proper.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, 28 U.S.C. § 1337, which confers original jurisdiction upon this Court for actions arising under any Act of Congress regulating commerce, 28 U.S.C. § 2201, which confers original

jurisdiction upon the filing of an appropriate pleading seeking to declare the rights and other legal relations of any interested party seeking such declaration, and 28 U.S.C. § 2202, conferring original jurisdiction concerning further necessary or proper relief based upon a declaratory judgment.

9.     The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, in as much as this judicial district lies in a State and District in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## PARTIES

11.     Plaintiff Pellot is a citizen of New York and resides in Brooklyn, New York.

12.     Joscelyn Wint is a citizen of New York and resides in Manhattan, New York.

13.     Plaintiff Muhammed is a citizen of New York and resides in New York, New York.

14.     Plaintiff Tucker is a citizen of New York and resides in Staten Island, New York

15.     Upon information and belief, Defendant Paramount Pictures Corporation ("Paramount") is located at 1515 Broadway, New York, New York 10036 and transacted business in New York by employing Plaintiffs and all those similarly situated in the New York metropolitan area during the production of various motion pictures, films and movies.

16.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Paramount exceeds $500,000.00, and thus subjects Defendant Paramount to the

FLSA's overtime requirements. Additionally, Defendant Paramount is engaged in interstate commerce. This independently subjects Defendant Paramount to the overtime requirements of the FLSA.

17.     Upon information and belief, Defendant Nickelodeon Movies, Inc. ("Nickelodeon Movies") is located at 5555 Melrose Avenue, Lubitsch Annex, Rm 119, Los Angeles, California 90038 and transacted business in New York by employing Plaintiffs and all those similarly situated in the New York metropolitan area during the production of various motion pictures, films and movies, including, but not limited to: *"TMNT"* and *"TMNT 2: Half Shell."*

18.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Nickelodeon Movies exceeds $500,000.00, and thus subjects Defendant Nickelodeon Movies to the FLSA's overtime requirements. Additionally, Defendant Nickelodeon Movies is engaged in interstate commerce. This independently subjects Defendant Nickelodeon Movies to the overtime requirements of the FLSA.

19.     Upon information and belief, Defendant Platinum Dunes Productions ("Platinum Dunes") is located at 9100 Wilshire Blvd, #1000w, Beverly Hills, California 90212 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: *"TMNT"* and *"Transformers: Dark of the Moon."*

20.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Platinum Dunes exceeds $500,000.00, and thus subjects Defendant Platinum Dunes to the FLSA's overtime requirements. Additionally, Defendant Platinum Dunes is engaged in interstate commerce. This independently subjects Defendant Platinum Dunes to the overtime requirements of the FLSA.

21.     Upon information and belief, Defendant Gama Entertainment Partners is located at 5555 Melrose Avenue, Los Angeles, California 90038 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*TMNT*" and "*TMNT 2: Half Shell*."

22.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Gama Entertainment Partners exceeds $500,000.00, and thus subjects Defendant Gama Entertainment Partners to the FLSA's overtime requirements.  Additionally, Defendant Gama Entertainment Partners is engaged in interstate commerce. This independently subjects Defendant Gama Entertainment Partners to the overtime requirements of the FLSA.

23.     Upon information and belief, Defendant Mednick Productions is located at 5555 Melrose Avenue, Dreier bldg., Ste 214, Los Angeles, California 90038 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*TMNT*."

24.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Mednick Productions exceeds $500,000.00, and thus subjects Defendant Mednick Productions to the FLSA's overtime requirements.  Additionally, Defendant Mednick Productions is engaged in interstate commerce. This independently subjects Defendant Mednick Productions to the overtime requirements of the FLSA.

25.     Upon information and belief, Defendant Heavy Metal Productions LLC ("Heavy Metal") is located at 8424A Santa Monica Blvd Ste. 713, West Hollywood, California 90069 and transacted business in New York State by employing Plaintiffs and all those similarly situated in

the New York metropolitan area during the production of various motion pictures, films and movies, including, but not limited to: "*TMNT*."

26.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Heavy Metal exceeds $500,000.00, and thus subjects Defendant Heavy Metal to the FLSA's overtime requirements.   Additionally, Defendant Heavy Metal is engaged in interstate commerce. This independently subjects Defendant Heavy Metal to the overtime requirements of the FLSA.

27.     Upon information and belief, Defendant Regency Film Enterprises, Inc. ("Regency") is located at 6405 San Vicente Blvd, Los Angeles, California 90048 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Noah*," "*Knight and Day*," "*Broken City*," "*Gone Girl*," "*Birdman*" and "*True Story*."

28.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Regency exceeds $500,000.00, and thus subjects Defendant Regency to the FLSA's overtime requirements.   Additionally, Defendant Regency is engaged in interstate commerce. This independently subjects Defendant Regency to the overtime requirements of the FLSA.

29.     Upon information and belief, Defendant Protozoa Pictures, Inc. ("Protozoa") is located at 225 W 13th St, New York, New York 10013 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Noah*," "*PI*," "*Black Swan*" and "*2 Days in New York*."

30.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Protozoa exceeds $500,000.00, and thus subjects Defendant Protozoa to the FLSA's overtime requirements. Additionally, Defendant Protozoa is engaged in interstate commerce. This independently subjects Defendant Protozoa to the overtime requirements of the FLSA.

31.     Upon information and belief, Defendant Disruption Entertainment, Inc. ("Disruption") is located at 1880 Century Park East, Suite 1600, Los Angeles, California 90067 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Noah.*"

32.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Disruption exceeds $500,000.00, and thus subjects Defendant Disruption to the FLSA's overtime requirements. Additionally, Defendant Disruption is engaged in interstate commerce. This independently subjects Defendant Disruption to the overtime requirements of the FLSA.

33.     Upon information and belief, Defendant Red Granite Pictures, Inc. ("Red Granite") is located at 10990 Wilshire Blvd, 8th Fl., Los Angeles, California 90024 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Wolf of Wall Street*" and "*Friends With Kids.*"

34.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Red Granite exceeds $500,000.00, and thus subjects Defendant Red Granite to the FLSA's overtime requirements. Additionally, Defendant Red Granite is engaged in interstate

commerce. This independently subjects Defendant Red Granite to the overtime requirements of the FLSA.

35.     Upon information and belief, Defendant Appian Way Productions ("Appian Way") is located at 8965 Appian Way, Los Angeles, California 90046 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Wolf of Wall Street*" and "*Detachment*."

36.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Appian Way exceeds $500,000.00, and thus subjects Defendant Appian Way to the FLSA's overtime requirements.  Additionally, Defendant Appian Way is engaged in interstate commerce. This independently subjects Defendant Appian Way to the overtime requirements of the FLSA.

37.     Upon information and belief, Defendant Sikelia Productions, Inc. ("Sikelia") is located at 150 S Rodeo Dr, 3rd Fl., Beverly Hills, California 90212 and transacted business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Wolf of Wall Street*" and "*The 50 Year Argument*."

38.     Upon information and belief, the amount of qualifying annual volume of business for Defendant Sikelia exceeds $500,000.00, and thus subjects Defendant Sikelia to the FLSA's overtime requirements.  Additionally, Defendant Sikelia is engaged in interstate commerce. This independently subjects Defendant Sikelia to the overtime requirements of the FLSA.

39.     Upon information and belief, Defendant EMJAG Productions II, Inc. ("EMJAG") is located at 21031 Venture Blvd, Suite 1000, Woodland Hills, California 91364 and transacted

business in New York State by employing Plaintiffs and all those similarly situated in the New York metropolitan area during production of various motion pictures, films and movies, including, but not limited to: "*Wolf of Wall Street,*" "*Paranoia*" and "*Bullet to the Head.*"

40.     Upon information and belief, the amount of qualifying annual volume of business for Defendant EMJAG exceeds $500,000.00, and thus subjects Defendant EMJAG to the FLSA's overtime requirements.   Additionally, Defendant EMJAG Productions is engaged in interstate commerce. This independently subjects Defendant EMJAG to the overtime requirements of the FLSA.

41.     John Does 1-10 represent the currently unknown parent, subsidiary, or affiliate entities and/or individuals of the named Defendants involved in or otherwise responsible for the production, scheduling, hiring, termination, terms & conditions of employment, compensation and/or overall pay practices on the Production Site of the movie "*TMNT,*" which was filmed in the New York metropolitan area.

42.     John Does 11-20 represent the currently unknown parent, subsidiary, or affiliate entities and/or individuals of the named Defendants involved in or otherwise responsible for the production, scheduling, hiring, termination, terms & conditions of employment, compensation and/or overall pay practices on the Production Site of the movie "*TMNT 2: Half Shell,*" which was filmed in the New York metropolitan area.

43.     John Does 21-30 represent the currently unknown parent, subsidiary, or affiliate entities and/or individuals of the named Defendants involved in or otherwise responsible for the production, scheduling, hiring, termination, terms & conditions of employment, compensation and/or overall pay practices on the Production Site of the movie "*Noah,*" which was filmed in the New York metropolitan area.

44.     John Does 31-40 represent the currently unknown parent, subsidiary, and/or affiliate entities and/or individuals of the named Defendants involved in or otherwise responsible for the production, scheduling, hiring, termination, terms & conditions of employment, compensation and/or overall pay practices on the Production Site of the movie *The Wolf of Wall Street*," which was filmed in the New York metropolitan area.

45.     At all relevant times, Defendant Paramount, along with each of the other Defendants, jointly employed Plaintiffs and together formed a "single integrated enterprise."

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.     Plaintiffs bring the first claim for relief pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated persons who elect to opt into this action and presently work for, or in the past have worked for, any or all of the Defendants, in the following collective class:

> All PPAs (or other employees performing substantially the same job duties and responsibilities under other nomenclature), employed in the New York metropolitan area, who worked in excess of forty (40) hours in a given workweek during the FLSA statutory period ("FLSA Class") on the production of a film, motion picture or movie produced by Defendants or their affiliated entities.

47.     At all relevant times, Plaintiffs are and have been similarly situated to all FLSA Class members because while employed by Defendants they performed similar tasks, were subject to the same laws and regulations, were paid in the same or similar manner, were paid the same or similar rates, were required to work in excess of forty (40) hours per work-week, and were not paid the required one and a half (1 ½) times their respective regular rates of pay for time worked beyond forty (40) hours per week.

48.     Upon information and belief, Defendants treated all FLSA Class members similarly in requiring them to work in excess of forty (40) hours per workweek without adequate overtime

compensation.  Plaintiffs and FLSA Class members currently work (or worked) for Defendants at various Production Sites throughout the New York metropolitan area four (4) to six (6) days per week for an average of sixty (60) to one-hundred (100) hours per week, or more.  They were regularly and specifically scheduled to work more than forty (40) hours per workweek, yet Defendants did not pay them the statutorily required overtime compensation.  This practice was applied to all PPAs who worked on a motion picture, film or movie produced by one or more of the Defendants against all employees in a similar or identical fashion.

49.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate the FLSA Plaintiffs, and as such, notice should be sent to the FLSA Class members pursuant to 29 U.S.C. § 216(b).   There are numerous similarly situated current and former employees of Defendants who were subject to the conduct complained of herein and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join the action.  Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

50.     Defendants' conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Class.  As exemplified by their doctored payroll records, Defendants are and have been aware of the requirement to pay Plaintiffs an overtime rate for their hours in excess of forty (40) per workweek. However, Defendants have purposefully elected to force Plaintiffs to work off-the-clock hours by unilaterally reducing their reported hours of work each workweek and thus have knowingly and willfully failed to pay overtime.

## RULE 23 CLASS ALLEGATIONS

51.     Plaintiffs additionally seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL.

52.     The Class which Plaintiffs seek to define includes:

> All PPAs (or other employees performing substantially the same job duties and responsibilities under other nomenclature), employed in the New York metropolitan area, who worked in excess of forty (40) hours in a given workweek during the NYLL Labor Law statutory period (the "New York Class") on the production of a film, motion picture or movie produced by Defendants or their affiliated entities.

53.     The persons in the New York Class identified above are so numerous that joinder of all members is impracticable.  Although Plaintiffs do not know the precise number of such persons, the facts upon which to base the calculation of that number are readily ascertainable since the identity, addresses, time records, work schedules, positions and rates of pay for each Class Member are determinable from Defendants' records.  Notice can be provided pursuant to FRCP 23.

54.     Upon information and belief, during the previous six (6) years, Defendants have, in total, employed well in excess of 500 PPAs in order to staff their Production Sites throughout the State of New York.

55.     There are questions of law and/or fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to the following:

> a.     whether members of the New York Class were scheduled to work and/or required to work shifts of approximately twelve (12) hours, spanning four  (4) to six (6) consecutive days per week;

13

b.   Whether members of the New York Class were paid at least the minimum wage for the hours worked in excess of forty (40) hours per week

c.   whether members of the New York Class were properly compensated for overtime pay pursuant to Defendants' policies;

d.   whether Defendants failed to properly pay members of the New York Class for the hours worked in excess of forty (40) hours per week;

e.   whether Defendants had a uniform policy and practice of paying a flat shift-rate of pay, including for overtime hours Defendants acknowledged Plaintiffs and members of the New York Class worked;

f.   whether Defendants required members of the New York Class to work "off-the-clock" prior to and/or after their shifts;

g.   whether Defendants reduced members of the New York Class's actual hours worked each pay period in an effort to circumvent overtime pay requirements and whether such circumvention was willful;

h.   whether Defendants kept accurate records of hours worked by members of the New York Class; and,

i.   whether Defendants have any affirmative defenses for any of these claims.

56.    The claims of Plaintiffs are typical of the claims of the members of the New York Class sought to be represented. Plaintiffs and the other New York Class Members are or were employed by one or more of the Defendants and their affiliated entities and have been subjected to their policies, patterns or practices of failing to pay minimum wage, overtime or proper overtime wages for hours worked in excess of forty (40) hours per week.

57.     Defendants employed Plaintiffs in the same capacity as all members of the New York Class.  All members of the New York Class were treated the same or similarly with respect to pay or lack thereof.  Thus, there are common questions of law and fact which are applicable to each and every one of the members of the New York Class.

58.     This treatment included, but was not limited to, failure to pay employees the proper minimum and overtime wages.

59.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the New York Class.

60.     Plaintiffs have kept records from their time working for Defendants and their affiliated entities and would properly and adequately represent the current and former employees who have been subjected to the treatment alleged herein.  Additionally, Plaintiffs' attorneys have substantial experience in this field of law.

61.     A class action is superior to other available methods for the fair and efficient adjudication of the NYLL claims, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a company.  Class treatment of the New York Class claims is superior because it will obviate the need for duplicative litigation that may result in inconsistent judgments about Defendants' practices.  Plaintiffs have no facts relating to the class claims that are atypical from those of the class.  Indeed, upon information and belief, Plaintiffs were treated identically to other members of the New York Class.

## STATEMENT OF THE FACTS

*Facts Common to all Plaintiffs and Defendants*

62.     Defendants produce various motion pictures, films and movies on video and in digital form.

63.     As part of such production, the Defendants hire PPAs to work on their various Production Sites in the New York metropolitan area.

64.     The PPAs secure the Production Sites during the course of said productions.  In order for the PPAs to properly secure the Production Sites, they are required to work round-the-clock surveillance without any breaks.

65.     As PPAs, Plaintiffs are required to work during all hours in which Defendants or their property are present on a Production Site, including during inclement weather and when the set is shut down for any reason.

66.     Plaintiffs are unable to leave the Production Site for food and are not provided compensation for either lunch or dinner, although dinner is provided for other employees of the Defendants.

67.     Plaintiffs are given limited access to the restrooms on the Production Sites. Plaintiffs are only provided restroom privileges when and if the production is in the midst of filming. Otherwise, Plaintiffs are forced to go to the bathroom in their car or pay local businesses in order to use their restroom facilities. Due to limitations on their ability to leave their assigned locations, many of the Plaintiffs are forced to urinate and defecate into bottles and buckets in their vehicles.

68.     Moreover, Plaintiffs are forced to work in extreme weather and at times are not allowed to use externally powered heaters or are forced to run their vehicles 24 hours per day in order to have heat or air conditioning.

69.     Generally, at each Production Site, a location manager, a parking coordinator and an accountant for Defendants determine a flat rate of pay per shift that is applicable to all of the PPAs utilized at that Production Site.

70.     The Defendants have been responsible for scheduling the Plaintiffs for work and determining the number of shifts each Plaintiff worked in a given week.

71.     Defendants paid Plaintiffs and those similarly situated with a flat shift-rate of pay ranging from $140.00 to $160.00 for each twelve (12) hour shift.  This rate of pay varied based on the production on which Plaintiffs were working.  The most common shift rate was $150.00 per shift.

72.     Plaintiffs were required by Defendants to work at least four (4) hours in order to be paid for a six (6) hour "half-shift" rate of pay.  Similarly, Plaintiffs were required to work at least eight (8) hours in order to be paid for a twelve (12) hour "full shift" rate of pay. If Plaintiffs failed to meet the abovementioned thresholds, they were not compensated by Defendants for hours worked below these threshold levels.

73.     For example, if Plaintiffs worked less than four (4) hours they would not be compensated at all. If Plaintiffs worked between six (6) and eight (8) hours, they would only be compensated for six (6) hours. Similarly, if Plaintiffs worked fifteen (15) hours they would only be compensated for twelve (12) hours.

74.     Plaintiffs never had any influence or say over their rate of pay per shift.

75.     Defendants provide a payroll company with all the necessary hiring and employment records for the PPAs including, but not limited to: W2 employment forms, W4 Employment Forms, Pay Rate Acknowledgment Forms, Wage Verification Forms (purporting to provide the information required under the New York WTPA), Conflict of Interest Questionnaires, Direct Deposit Forms and Employment Verification Forms.

76.     During the execution of these documents, Defendants required Plaintiffs to leave the wage information blank on the Wage Verification Forms and Defendants later filled in the

information required by the New York WTPA with the rates necessary to complete their scheme of depriving Plaintiffs of their minimum wage and overtime pay.

77.     Defendants would then provide the final pay information for each PPA to a payroll company that issued paychecks to the Plaintiffs on a weekly basis.

78.     These paychecks did not accurately reflect the agreed upon rates of pay or the number of hours actually worked by each Plaintiff per workweek.

### DEFENDANT PARAMOUNT

79.     From January 1, 2010 to the present, Defendant Paramount has produced and distributed motion pictures, films and movies, at its behest and in conjunction with, the other Defendants or through its own production efforts.

80.     Defendant Paramount, in conjunction with the other Defendants, has employed PPAs subjected to the unlawful pay practices described above.

81.     During the relevant time period and presently, these productions include, but are not limited to: *"TMNT," "TMNT 2: Half Shell," "The Dictator," "Young Adult," "Noah," "Wolf of Wall Street," "A Very Harold & Kumar 3D Christmas," "Demolition," "Breathe In," "Not Fade Away"* and *"Transformers: Dark of the Moon."* ("Paramount Movie Productions").

82.     All Plaintiffs are similarly situated to the FLSA Class and New York Class members hired in connection with the production of the Paramount Movie Productions.

### Christian Pellot

83.     Beginning in or around 2013 and continuing until 2014, Plaintiff Pellot worked as a PPA on the film *"TMNT"*, produced by Defendants Paramount, Nickelodeon Movies, Platinum Dunes, Gama Entertainment Partners, Mednick Productions, Heavy Metal , and John Does 1-10.

84.     Plaintiff Pellot was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

85.      Plaintiff Pellot was required to work in excess of 40 hours per week without receiving proper overtime compensation.

86.     Plaintiff Pellot's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

*Joscelyn Wint*

87.     Beginning in or around 2015 to the present, Plaintiff Wint worked as a PPA on the film "*TMNT 2: Half Shell*", produced by Defendants Paramount, Nickelodeon Movies, Gama Entertainment Partners, and John Does 11-20.

88.     Plaintiff Wint was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

89.      Plaintiff Wint was required to work in excess of 40 hours per week without receiving proper overtime compensation.

90.     Plaintiff Wint's paycheck did not reflect the actual hours worked and she was effectively made to work "off the clock."

*Ali Muhammed*

91.     Beginning in or around 2013 and continuing until 2014, Plaintiff Muhammed worked as a PPA on the film, "*Noah*", produced by Defendants Paramount, Regency, Protozoa, Disruption, and John Does 21-30.

92.     Plaintiff Muhammed was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

93.     Plaintiff Muhammed was required to work in excess of forty (40) hours per week without receiving proper overtime compensation.

94.     Plaintiff Muhammed's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock."

*Johnathan Tucker*

95.     Beginning in or around 2012 and continuing until the end of 2013, Plaintiff Tucker worked as a PPA on the film, "*The Wolf of Wall Street*", produced by Defendants Paramount, Red Granite, Appian Way, Sikelia, EMJAG, and John Does 31-40.

96.     Plaintiff Tucker was paid $150 per twelve (12) hour shift and worked on average between sixty (60) and one-hundred (100) hours a week.

97.     Plaintiff Tucker was required to work in excess of 40 hours per week without receiving proper overtime compensation.

*98.*     Plaintiff Tucker's paycheck did not reflect the actual hours worked and he was effectively made to work "off the clock.

*The Violations*

99.     Although Defendants informed Plaintiffs that they were to be paid on a flat shift-rate basis, Defendants never correctly compensated Plaintiffs by paying their statutorily required overtime pay.  Rather, ***Defendants unilaterally reduced the number of reported hours worked by Plaintiffs and calculated a fictitious, hourly overtime rate which ultimately resulted in Plaintiffs receiving only the flat shift rate***.

100.    As such, the reported hours worked on each of the paychecks were consistently less than what Plaintiffs actually worked during that pay period.

101.   Upon information and belief, Defendants have obtained the assistance of accountants and/or employees to calculate the precise number of purported regular, overtime and double time hours reported on Plaintiffs' checks so that Plaintiffs' stated weekly gross earnings correspond to pre-determined totals budgeted and accounted for by Defendants.

102.   Defendants' methodology of "backing out" the hours to meet pre-determined weekly figures is unlawful, as it directly resulted in the Plaintiffs being improperly paid for their total hours worked.

103.   In order to hide the fact that Plaintiffs have been paid less than what is statutorily required, Defendants falsely and incorrectly stated the numbers of hours worked in payroll records and on Plaintiffs' paychecks.  Defendants did not take into account the fact that Plaintiffs' shifts were twelve (12) hours in length when computing their hours worked per week.  This was all done by Defendants as part of an effort to withhold from Plaintiffs their lawful compensation.

104.   In effect, Defendants have been continuously "shaving off" hours that Plaintiffs worked each week, forcing the Plaintiffs to work "off-the-clock."

105.   As a result, Plaintiffs have not been paid for their actual total hours worked throughout the workweek.

106.   Upon information and belief, Plaintiffs and those similarly situated have been treated uniformly throughout their employment with Defendants at their various Production Sites.

107.   At all relevant times, Defendants controlled all terms and conditions of Plaintiffs' employment, including but not limited to their hours and rates of pay.

108.   All Defendants have been aware of their payroll practice and were consciously disregarding the requirements of the FLSA and NYLL.

109.    All Defendants have been knowingly and willfully paying Plaintiffs and other similarly situated PPAs a shift-rate for hours worked over forty (40) rather than an hourly rate, which deprived them of statutorily mandated overtime.

110.    All Defendants have been knowingly and willfully depriving Plaintiffs and other similarly situated PPAs of the statutorily mandated minimum wage as illustrated in Paragraphs 72-73 above.

111.    This falsification of payroll records further evidences Defendants' knowing and willful violation of the law.

## CAUSES OF ACTION

### AS AGAINST DEFENDANT PARAMOUNT BY ALL PLAINTIFFS

**First Cause of Action**
**for Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219**

112.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

113.    Defendant Paramount employed the FLSA Plaintiffs, and employed or continues to employ, each member of the FLSA Plaintiff collective within the meaning of the FLSA.

114.    Defendant Paramount has engaged in a widespread pattern and practice of violating the FLSA, as detailed in the Complaint.

115.    The Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

116.    The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to Defendant Paramount.

117.    Defendant Paramount has a policy and practice of paying a shift rate of pay in lieu of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due to FLSA Plaintiffs.

118.    As a result of Defendant Paramount's willful failure to compensate FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant Paramount has violated, and continues to violate, the FLSA.

119.    As a result of Defendant Paramount's willful failure to record, credit and/or compensate FLSA Plaintiffs, Defendant Paramount has failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

120.    As a result of Defendant Paramount's FLSA violations, FLSA Plaintiffs are entitled to recover from Defendant Paramount (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Defendant Paramount's willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

121.    Because Defendant Paramount's violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.

### Second Cause of Action
### for Violation of the New York Labor Law §§ 650 *et. seq.*

122.    Plaintiffs on behalf of themselves and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

123.    Defendant Paramount employed Plaintiffs, and employed or continues to employ, each of the members of the New York Class within the meaning of the NYLL.

124.     Defendant Paramount has engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

125.     The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant Paramount.

126.     Defendant Paramount has failed to pay Plaintiffs and the New York Class the minimum and overtime wages to which they are entitled under the NYLL.

127.     By virtue of Defendant Paramount's failure to pay Plaintiffs and the New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, Defendant Paramount has willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. 142-2.1 and 12 N.Y.C.R.R. 142-2.2.

128.     As a result of Defendant Paramount's willful violations of the NYLL as relates to the Plaintiffs, they and the New York Class are entitled to recover from Defendant Paramount their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

129.     Defendant Paramount's NYLL violations have caused the Plaintiffs and the New York Class irreparable harm for which there is no adequate remedy at law.


**Third Cause of Action for Violation of the New York Labor Law**

130.     Plaintiffs, on behalf of themselves and the New York Class, re-allege and incorporate by reference all proceeding paragraphs above as if they were set forth again herein.

131.    NYLL §195(3) requires that Defendant Paramount furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

132.    NYLL §195(4) requires, among other things, that Defendant Paramount establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

133.    NYLL §661 requires that Defendant Paramount maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

134.    12 N.Y.C.R.R. §142-2.6 requires Defendant Paramount to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

135.    N.Y.C.R.R. §142-2.7 requires Defendant Paramount to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

136.    Defendant Paramount did not provide Plaintiffs or the New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

137.    As a result of Defendant Paramount's failure to comply with the notice and record keeping requirements of NYLL §195 (including subsections (3) and (4) thereof, Plaintiffs and members of the New York Class are entitled to recover from Defendant Paramount penalties as provided by NYLL §198(1)(b) and 198(1)(d).

**AS AGAINST DEFENDANTS NICKELODEON MOVIES, PLATINUM DUNES,
GAMA ENTERTAINMENT PARTNERS, MEDNICK PRODUCTIONS, HEAVY
METAL, AND JOHN DOES 1-10
(HEREINAFTER "TMNT" DEFENDANTS)
BY PLAINTIFF PELLOT AND THOSE SIMILARLY SITUATED**

**Fourth Cause of Action for Violation of the Fair Labor Standards Act
29 U.S.C. §§ 201-219**

138.     Plaintiff Pellot, on behalf of himself and similarly situated members of the FLSA
Class employed by Defendants as PPAs on the production of *TMNT* (the "TMNT FLSA
Plaintiffs"), re-allege and incorporate by reference all allegations in all preceding paragraphs as if
they were set forth again herein.

139.     TMNT Defendants employed the TMNT FLSA Plaintiffs, and employed or
continue to employ, each member of the TMNT FLSA Plaintiffs' collective within the meaning of
the FLSA.

140.     TMNT Defendants have engaged in a widespread pattern and practice of violating
the FLSA, as detailed in the Complaint.

141.     Plaintiff Pellot consents in writing to be a party to this action, pursuant to 29 U.S.C.
§ 216(b).

142.     The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to TMNT
Defendants.

143.     TMNT Defendants have a policy and practice of paying a shift rate of pay in lieu
of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due to the
TMNT FLSA Plaintiffs.

144.     As a result of TMNT Defendants' willful failure to compensate the TMNT FLSA
Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed

in excess of forty (40) hours in a workweek, TMNT Defendants have violated, and continue to violate, the FLSA.

145.    As a result of TMNT Defendants' willful failure to record, credit and/or compensate TMNT FLSA Plaintiffs, TMNT Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

146.    As a result of TMNT Defendants' FLSA violations, TMNT FLSA Plaintiffs are entitled to recover from TMNT Defendants (a) overtime compensation; (b) an additional, equal amount as liquidated damages for TMNT Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

147.    Because TMNT Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.


**Fifth Cause of Action for Violation of the New York Labor Law §§ 650 _et. seq._**

148.    Plaintiff Pellot on behalf of himself and similarly situated members of the New York Class employed by Defendants as PPAs on the production of _TMNT_ (the "TMNT New York Class") re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

149.    TMNT Defendants employed Plaintiff Pellot, and employed or continue to employ, each of the TMNT New York Class within the meaning of the NYLL.

150.     TMNT Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

151.     The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to TMNT Defendants.

152.     TMNT Defendants have failed to pay Plaintiff Pellot and the TMNT New York Class the minimum and overtime wages to which they are entitled under the NYLL.

153.     By virtue of TMNT Defendants' failure to pay Plaintiff Pellot and the TMNT New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, TMNT Defendants have willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R., Part 142.

154.     As a result of TMNT Defendants' willful violations of the NYLL as relates to Plaintiff Pellot and the TMNT New York Class are entitled to recover from TMNT Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

155.     TMNT Defendants' NYLL violations have caused Plaintiff Pellot and TMNT New York Class irreparable harm for which there is no adequate remedy at law.

### Sixth Cause of Action for Violation of the New York Labor Law

156.     Plaintiff Pellot, on behalf of himself and similarly situated members of the TMNT New York Class, re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

157.    NYLL §195(3) requires that TMNT Defendants furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

158.    NYLL §195(4) requires, among other things, that TMNT Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

159.    NYLL §661 requires that TMNT Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

160.    12 N.Y.C.R.R. §142-2.6 requires TMNT Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

161.    N.Y.C.R.R. §142-2.7 requires TMNT Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

162.    TMNT Defendants did not provide Plaintiff Pellot or the TMNT New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

163.    As a result of TMNT Defendants' failure to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), Plaintiff Pellot and TMNT New York Class are entitled to recover from TMNT Defendants all penalties as provided by NYLL §198(1)(b) and 198(1)(d).

**AS AGAINST DEFENDANTS NICKELODEON MOVIES, GAMA
ENTERTAINMENT PARTNERS, AND JOHN DOES 11-20
(HEREINAFTER "HALF SHELL" DEFENDANTS)
BY PLAINTIFF WINT AND THOSE SIMILARLY SITUATED**

**Seventh Cause of Action for Violation of the Fair Labor Standards Act
29 U.S.C. §§ 201-219**

164.    Plaintiff Wint, on behalf of himself and similarly situated members of the FLSA
Class employed by Defendants as PPAs on the production of *TMNT 2: Half Shell* (the "Half Shell
FLSA Plaintiffs"), re-allege and incorporate by reference all allegations in all preceding
paragraphs as if they were set forth again herein.

165.    Half Shell Defendants employed the Half Shell FLSA Plaintiffs, and employed or
continue to employ, each member of the Half Shell FLSA Plaintiffs' collective within the meaning
of the FLSA.

166.    Half Shell Defendants have engaged in a widespread pattern and practice of
violating the FLSA, as detailed in the Complaint.

167.    Plaintiff Wint consents in writing to be a party to this action, pursuant to 29 U.S.C.
§ 216(b).

168.    The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to Half
Shell Defendants.

169.    Half Shell Defendants have a policy and practice of paying a shift rate of pay in
lieu of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due to
the Half Shell FLSA Plaintiffs.

170.    As a result of Half Shell Defendants' willful failure to compensate the Half Shell
FLSA Plaintiffs at a rate not less than one and one-half (1 ½) times the regular rate of pay for work

performed in excess of forty (40) hours in a workweek, Half Shell Defendants have violated, and continue to violate, the FLSA.

171.    As a result of Half Shell Defendants' willful failure to record, credit and/or compensate Half Shell FLSA Plaintiffs, Half Shell Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

172.    As a result of Half Shell Defendants' FLSA violations, Half Shell FLSA Plaintiffs are entitled to recover from Half Shell Defendants: (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Half Shell Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

173.    Because Half Shell Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.

**Eighth Cause of Action for Violation of the New York Labor Law §§ 650 *et. seq.***

174.    Plaintiff Wint on behalf of himself and similarly situated members of the New York Class employed by Defendants as PPAs on the production of *TMNT 2: Half Shell* (the "Half Shell New York Class"), re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

175.    Half Shell Defendants employed Plaintiff Wint, and employed or continue to employ, members of the Half Shell New York Class within the meaning of the NYLL.

176.    Half Shell Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

177.    The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Half Shell Defendants.

178.    Half Shell Defendants have failed to pay Plaintiff Wint and the Half Shell New York Class the minimum and overtime wages to which they are entitled under the NYLL.

179.    By virtue of Half Shell Defendants' failure to pay Plaintiff Wint and the Half Shell New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, Half Shell Defendants have willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R., Part 142.

180.    As a result of Half Shell Defendants' willful violations of the NYLL as related to Plaintiff Wint, Plaintiff Wint and the Half Shell New York Class are entitled to recover from Half Shell Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

181.    Half Shell Defendants' NYLL violations have caused Plaintiff Wint and the Half Shell New York Class irreparable harm for which there is no adequate remedy at law.

**Ninth Cause of Action for Violation of the New York Labor Law**

182.    Plaintiff Wint, on behalf of himself and similarly situated members of the Half Shell New York Class, re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

183.    NYLL §195(3) requires that Half Shell Defendants furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

184.    NYLL §195(4) requires, among other things, that Half Shell Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

185.    NYLL §661 requires that Half Shell Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

186.    12 N.Y.C.R.R. §142-2.6 requires Half Shell Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

187.    N.Y.C.R.R. §142-2.7 requires Half Shell Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

188.    Half Shell Defendants did not provide Plaintiff Wint or the Half Shell New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

189.    As a result of Half Shell Defendants' failure to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), Plaintiff Wint and Half Shell New York Class are entitled to recover from Half Shell Defendants all penalties as provided by NYLL §198(1)(b) and 198(1)(d).

## AS AGAINST DEFENDANTS REGENCY, PROTOZOA, DISRUPTION, AND JOHN DOES 21-30
## (HEREINAFTER "NOAH" DEFENDANTS)
## BY PLAINTIFF MUHAMMED AND THOSE SIMILARLY SITUATED

### Tenth Cause of Action for Violation of the Fair Labor Standards Act
### 29 U.S.C. §§ 201-219

190.    Plaintiff Muhammed, on behalf of himself and similarly situated members of the FLSA Class employed by Defendants as PPAs on the production of *Noah* ("Noah FLSA Plaintiffs"), re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

191.    Noah Defendants employed the Noah FLSA Plaintiffs, and employed or continue to employ, each member of the Noah FLSA Plaintiffs' collective within the meaning of the FLSA.

192.    Noah Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in the Complaint.

193.    Plaintiff Muhammed consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

194.    The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to Noah Defendants.

195.    Noah Defendants have a policy and practice of paying a shift rate of pay in lieu of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due the Noah FLSA Plaintiffs.

196.    As a result of Noah Defendants' willful failure to compensate the Noah FLSA Plaintiffs at a rate not less than one and one-half times the regular rate of pay for work performed

in excess of forty (40) hours in a workweek, Noah Defendants have violated, and continue to violate, the FLSA.

197.    As a result of Noah Defendants' willful failure to record, credit and/or compensate Noah FLSA Plaintiffs, Noah Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

198.    As a result of Noah Defendants' FLSA violations, Noah FLSA Plaintiffs are entitled to recover from Noah Defendants: (a) overtime compensation; (b) an additional, equal amount as liquidated damages for Noah Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

199.    Because Noah Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.


**Eleventh Cause of Action for Violation of the New York Labor Law §§ 650 *et. seq*.**

200.    Plaintiff Muhammed on behalf of himself and similarly situated members of the New York Class employed by Defendants as PPAs on the production of *Noah* ("the Noah New York Class"), re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

201.    Noah Defendants employed Plaintiff Muhammed, and employed or continue to employ, each of the Noah New York Class within the meaning of the NYLL.

202.   Noah Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

203.   The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Noah Defendants.

204.   Noah Defendants have failed to pay Plaintiff Muhammed and the Noah New York Class the minimum and overtime wages to which they are entitled under the NYLL.

205.   By virtue of Noah Defendants' failure to pay Plaintiff Muhammed and the Noah New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, Noah Defendants have willfully violated NYLL Article 19, §§650, *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R., Part 142.

206.   As a result of Noah Defendants' willful violations of the NYLL as related to Plaintiff Muhammed, they and the Noah New York Class are entitled to recover from Noah Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

207.   Noah Defendants' NYLL violations have caused Plaintiff Muhammed and the Noah New York Class irreparable harm for which there is no adequate remedy at law.

### Twelfth Cause of Action for Violation of the New York Labor Law

208.   Plaintiff Muhammed, on behalf of himself and the Noah New York Class, re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

209.   NYLL §195(3) requires that Noah Defendants furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

210.   NYLL §195(4) requires, among other things, that Noah Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

211.   NYLL §661 requires that Noah Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

212.   12 N.Y.C.R.R. §142-2.6 requires Noah Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

213.   N.Y.C.R.R. §142-2.7 requires Noah Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

214.   Noah Defendants did not provide Plaintiff Muhammed or the Noah New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

As a result of Noah Defendants' failure to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), Plaintiff Muhammed and Noah New York Class are entitled to recover from Noah Defendants all penalties as provided by NYLL §198(1)(b) and 198(1)(d).

**AS AGAINST DEFENDANTS RED GRANITE APPIAN WAY, SIKELIA, EMJAG, AND
JOHN DOES 31-40
(HEREINAFTER "WOWS" DEFENDANTS)
BY PLAINTIFF TUCKER AND THOSE SIMILARLY SITUATED**

**Thirteenth Cause of Action for Violation of the Fair Labor Standards Act
29 U.S.C. §§ 201-219**

215.   Plaintiff Tucker, on behalf of himself and similarly situated members of the FLSA
Class employed by Defendants as PPAs on the production of *Wolf of Wall Street* ("WOWS FLSA
Plaintiffs"), re-allege and incorporate by reference all allegations in all preceding paragraphs as if
they were set forth again herein.

216.   WOWS Defendants employed the WOWS FLSA Plaintiffs, and employed or
continue to employ, each member of the WOWS FLSA Plaintiffs' collective within the meaning
of the FLSA.

217.   WOWS Defendants have engaged in a widespread pattern and practice of violating
the FLSA, as detailed in the Complaint.

218.   Plaintiff Tucker consents in writing to be a party to this action, pursuant to 29
U.S.C. § 216(b).

219.   The overtime wage provisions set forth in 29 U.S.C. §§201, *et seq.*, apply to
WOWS Defendants.

220.   WOWS Defendants have a policy and practice of paying a shift rate of pay in lieu
of an hourly rate and overtime.  Said shift pay did not accurately reflect overtime pay due the
WOWS FLSA Plaintiffs.

221.   As a result of WOWS Defendants' willful failure to compensate the WOWS FLSA
Plaintiffs at a rate not less than one and one-half (1 ½) times the regular rate of pay for work

performed in excess of forty (40) hours in a workweek, WOWS Defendants have violated, and continue to violate, the FLSA.

222.   As a result of WOWS Defendants' willful failure to record, credit and/or compensate WOWS FLSA Plaintiffs, WOWS Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment, in violation of the FLSA.

223.   As a result of WOWS Defendants' FLSA violations, WOWS FLSA Plaintiffs are entitled to recover from WOWS Defendants: (a) overtime compensation; (b) an additional, equal amount as liquidated damages for WOWS Defendants' willful violations of the FLSA; and, (c) reasonable attorney's fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

224.   Because WOWS Defendants' violations of the FLSA lacked good faith, a three-year statute of limitations applies pursuant to 29 U.S.C. §255.


**Fourteenth Cause of Action for Violation of the New York Labor Law §§ 650 *et. seq.***

225.   Plaintiff Tucker on behalf of himself and the WOWS New York Class, re-allege and incorporate by reference all allegations in all preceding paragraphs as if they were set forth again herein.

226.   WOWS Defendants employed Plaintiff Tucker, and employed or continue to employ, members of the WOWS New York Class within the meaning of the NYLL.

227.   WOWS Defendants have engaged in a widespread pattern and practice of violating the minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations, as detailed in the Complaint.

228.    The minimum and overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to WOWS Defendants.

229.    WOWS Defendants have failed to pay Plaintiff Tucker and the WOWS New York Class the minimum and overtime wages to which they are entitled under the NYLL.

230.    By virtue of WOWS Defendants' failure to pay Plaintiff Tucker and the WOWS New York Class minimum and overtime wages for all hours worked in excess of forty (40) hours per week, WOWS Defendants have willfully violated NYLL Article 19, §§650, *et. seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R., Part 142.

231.    As a result of WOWS Defendants' willful violations of the NYLL as related to Plaintiff Tucker, Plaintiff Tucker and the WOWS New York Class are entitled to recover from WOWS Defendants their unpaid minimum wages, overtime wages, liquidated damages, prejudgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action.

232.    WOWS Defendants' NYLL violations have caused Plaintiff Tucker and members of the WOWS New York Class irreparable harm for which there is no adequate remedy at law.

## Fifteenth Cause of Action for Violation of the New York Labor Law

233.    Plaintiff Tucker, on behalf of himself and the WOWS New York Class, re-alleges and incorporates by reference all allegations in all preceding paragraphs as if they were set forth again herein.

234.   NYLL §195(3) requires that WOWS Defendants furnish each of its employees with a statement with every payment listing gross wages, deductions and net wages, and upon request of an employee, an explanation of the computation of wages.

235.   NYLL §195(4) requires, among other things, that WOWS Defendants establish and maintain, for at least six (6) years payroll records showing the hours worked, gross wages, deductions and net wages for each employee.

236.   NYLL §661 requires that WOWS Defendants maintain, *inter alia*, true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, and the wages paid to all employees.

237.   12 N.Y.C.R.R. §142-2.6 requires WOWS Defendants to establish, maintain and preserve, for six (6) years, weekly payroll records showing, *inter alia*, each employee's name, wage rate, number of hours worked daily and weekly, amount of gross and net wages, deductions from gross wages, and any allowances claimed as part of the minimum wage.

238.   N.Y.C.R.R. §142-2.7 requires WOWS Defendants to furnish each employee with a statement with every payment of wages, listing hours worked, rates paid, gross and net wages, deductions, and allowances, if any, claimed as part of the minimum wage.

239.   WOWS Defendants did not provide Plaintiff Tucker or members of the WOWS New York Class with accurate or truthful requisite notices and statements described above in the foregoing paragraphs.

240.   As a result of WOWS Defendants' failure to comply with the notice and record keeping requirements of NYLL §195(1) and 195(3), Plaintiff Tucker and members of the WOWS New York Class are entitled to recover from WOWS Defendants all penalties as provided by NYLL §198(1)(b) and 198(1)(d).

41

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the FLSA Class and the New York Class employed by Defendants, demand judgment against Defendants as follows:

241.    At the earliest possible time, Plaintiffs should be allowed to give notice of this collective action, or the Court should issue such notice, to all members of the FLSA collective as defined herein.  Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper overtime wages;

242.    Designation of Plaintiffs as representatives of the FLSA Class and New York Class, and Plaintiffs' counsel as class counsel;

243.    Equitable tolling of the FLSA statute of limitations as a result of the Defendants' failure to post requisite notices under the FLSA;

244.    Certification of this action as a class action pursuant to Rule 23 of the Civil Rules of Civil Procedure for purposes of the claims brought on behalf of all New York Class members under the NYLL and the New York Department of Labor Regulations promulgated thereunder;

245.    Penalties under NYLL §§198(1)(b) and 198(1)(d) for Defendants' failure to comply with the notice and record-keeping requirements of NYLL §§ 195, including subsections (3) and (4) thereof;

246.    Demand a jury trial on these issues to determine liability and damages;

247.    Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

248.    A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219,  New York Labor Law, §§ 650 *et. seq*. and the New York Wage Theft Prevention Act, §195 of the New York Labor Law, as amended;

249.    All damages which Plaintiffs and all FLSA and New York Class members have sustained as a result of Defendants' conduct, including back pay, liquidated damages, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

250.    An award to the Plaintiffs and all FLSA and New York Class members of pre-judgment interest at the highest applicable rate, from and after the date of service of the initial complaint in this action, on all unpaid wages from the date such wages were earned and due;

251.    An award to the Plaintiffs and all FLSA and New York Class members representing Defendants' share of FICA, FUTA, state unemployment insurance and any other required employment taxes;

252.    An award to the Plaintiffs and all FLSA and New York Class members for the amount of unpaid wages, including interest thereon, and penalties subject to proof;

253.    Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

254.    Pre-judgment and post-judgment interest, as provided by law; and

255.    Granting Plaintiffs and all FLSA and New York Class members other and further relief as this Court finds necessary and proper.

Dated: January 21, 2016
      Garden City, New York

                        Respectfully Submitted,

                        VALLI KANE & VAGNINI, LLP
                        600 Old Country Road, Suite 519
                        Garden City, New York 11530
                        516-203-7180

                        Matthew Berman (MB-0707)
                        James Vagnini (JV-2163)
                        Robert J. Valli, Jr. (RV-9995)